UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

ROBERT NIGRO, PAT DAMIANI, JR., JOSEPH
DELEONARDIS, JOHN DISPENSA, ROBERT DIZINE,
ET. AL., AS TRUSTEES OF THE IBEW LOCAL 363
PENSION, WELFARE, ANNUITY AND J.A.T. FUNDS,
                                    Plaintiffs,

-against-                                          05 Civ. 2712 (CM)(GAY)

WILLIAM A. DWYER D/B/A ON-LINE ELECTRIC,
                                    Defendant.

------------------------------------------------------------------------x

**DECISION AND ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

McMahon, J:

**Introduction**

In 1998, On-Line Electric, Inc. ("On-Line") was dissolved for failing to pay its corporate franchise tax. Eighteen months later, defendant William A. Dwyer, On-Line's President, signed a Letter of Assent agreeing that On-Line would be bound by collective bargaining agreements between the Hudson Valley Chapter of the National Electrical Contractors Association ("NECA") and Local Union 363, International Brotherhood of Electrical Workers (the "Funds"). These agreements require contributions to various pension-type funds, based on work performed.

Dwyer made payment to the Funds through 2001. Dwyer subsequently performed electrical work. But he made no further payment to the Funds.

Plaintiffs have sued Dwyer personally for the unmade contributions. They allege that

-1-

defendant Dwyer is personally liable for the contributions because he signed the Letter of Assent on behalf of On-Line while the corporation was dissolved. Plaintiffs seek summary judgment as to defendant's liability and an inquest to resolve the amount owed and reasonable attorneys' fees.

Defendant denies liability. He contends that he is not liable because On-Line has paid its back franchise taxes and is currently in good standing. Interestingly, On-Line got itself reinstated on March 3, 2005, a mere six days before the Complaint against Dwyer was filed and shortly after he became aware that the Funds were "on to him."

Plaintiffs urge that defendant has waived or should be estopped from asserting the "improper party" defense because he did not raise it until this motion was filed. Defendant asserts that his general denial was sufficient to raise the defense.

For the reasons explained below, the Court denies this motion for partial summary judgment, and orders a trial on the issue of fraud.

**Facts**

Defendant's opposition to this motion has utterly failed to comply with the requirements of Local Rule 56.1, requiring responses to "**include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party**." Local Rule 56.1 (b). Local Rule 56.1 is not a mere formality, but rather is meant "to streamline the consideration of summary judgment motions by freeing district courts of the need to hunt through voluminous records without guidance from the parties." Deleon v. Putnam Valley Bd. of Educ., Slip Copy, 2006 WL 236744, at *2 (S.D.N.Y. Jan. 26, 2006), quoting Holz v.

Rockefeller & Co., Inc., 258 F.3d. 62, 74 (2d Cir. 2001).

Defendant's response to the motion does not include a Rule 56.1 Statement; all he filed is an Affidavit in Opposition and his attorney's Affirmation in Opposition. These responses are not keyed to plaintiffs' Statement of Facts. Nor do they properly cite to evidence in the record, pursuant to Local Rule 56.1(d).

Defendant's failure to comply with Rule 56.1 permits the Court to deem the facts in plaintiffs' Rule 56.1 Statement uncontroverted, and I do so. These uncontroverted facts will still be viewed in a light most favorable to the non-moving party (defendant), as per the standard of review on a motion for summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).[1]

*Parties*

Defendant operates On-Line Electric, Inc., ("On-Line"), an electrical contracting corporation organized to do business under the laws of the State of New York on June 17, 1994. Compl. ¶ 6, McGovern Affirmation Ex. 3.

On-Line was dissolved by the Department of State of the State of New York on September 23, 1998, for failing to pay its franchise taxes. Pls.' Reply Mem. of Law at 7, citing McGovern Supp. Affirmation ¶ 3, Ex. 3. Subsequent to the corporation's dissolution, defendant continued to do business under the name of On-Line. Pls.' Local Rule 56.1 St. of Facts ¶ 3.

---

[1] I decline to grant the motion solely because defendant also failed to file a Memorandum of Law, although the Local Rules permit me to do so. Kamara v. United States, 2005 WL 2298176, at *1 (S.D.N.Y. Sept. 20, 2005).

*Defendant's Relationship with the Funds*

Defendant signed a Letter of Assent on February 2, 2000, appointing the Hudson Valley Chapter of NECA as defendant's "collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved inside labor agreement between the Hudson Valley Chapter NECA and Local Union 363, IBEW." Pls.' 56.1 St. ¶¶ 3-4.

When defendant signed the Letter of Assent, NECA and the Funds were parties to a collective bargaining agreement that was effective from 9/1/97 through 3/31/01. Pls.' 56.1 St. ¶ 11. NECA and the Funds entered into two successor agreements, the first from 4/1/01 through 3/31/04, and the next from 4/1/04 through 3/31/07. Pls.' 56.1 St. ¶ 12.

These agreements require an employer to pay contributions to several pension-type funds based on the amount of work performed. Section 11.04 of the collective bargaining agreement sets out, "A contractor who normally performs electrical installations, must pay into all of the above funds. The contractors' rate of pay will be based on the Journeyman Wireman's rate of pay." Pls.' 56.1 St. ¶ 14.

Subsequent to defendant's signing the Letter of Assent in 2000, defendant began to make payments to the Funds, according to the terms of the agreement. Id. ¶ 6. Defendant reported working 800 hours in 2000 and 160 hours in 2001. Id. ¶¶ 7-8.

*The Time Frame in Question.*

Defendant stopped making payments to the funds in 2001. He has not made any payments since that time. Id. ¶ 10. Defendant has not reported working any hours from 2002

through 2006, even though he admits in his deposition to having performed such work. Id. ¶¶ 9-10.

Joseph Maraia, Business Manager of the Funds, sent a letter to Dwyer dated January 27, 2005. In "an effort to update our files," the letter asks that defendant "complete the enclosed Letters of Assent." Aff. in Opp. ¶ 5. There is no evidence as to which parties were named in this new Letter.

*On-Line's Status*

Defendant payed On-Line's back franchise taxes shortly after receiving Mr. Maraia's January 27, 2005 letter, and the corporation was reinstated in good standing on March 3, 2005.. Id.

*Procedural History and Issues*

Plaintiffs filed their Complaint on March 9, 2005, against defendant William A. Dwyer, doing business as On-Line Electric, Inc., asserting his personal liability for failing to comply with the collective bargaining agreement he entered into with the IBEW Local 363 Pension Fund. Compl. ¶ 7.

Defendant, in his Answer, generally denied most of the paragraphs in plaintiffs' Complaint. He did not assert any affirmative defense or specifically allege that the corporation, rather than he, was the party liable.

**Discussion**

A. Standard of Review

A party is entitled to summary judgment pursuant to Rule 56 when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P.56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co., 475 U.S. 574 (1986). Whether any disputed issue of fact exists is for the Court to determine. Balderman v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation" and "must do more than simply show that there is some *metaphysical doubt* as to the material facts." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Matsushita Elec. Indus. Co., 475 U.S. at 586 (citations omitted). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248.

B. Merits

The terms of the Letter of Assent make On-Line liable to the Funds for unpaid contributions and other damages that might follow pursuant to the collective bargaining agreements, and 29 U.S.C. §§1132(g) and 1145.

*1. The Letter of Assent is Still Valid.*

There is no question that the Letter of Assent has been valid since its signing in 2000 and continues to be valid to this day. The Letter "shall remain in effect until terminated by the undersigned employer giving written notice to the Hudson Valley Chapter NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." Maraia Aff. Ex. A. The "undersigned employer" never sent written notice to the Union and NECA that it wished to terminate the contract, so it continues in force.

In his Affidavit, defendant argues that Maraia's tender of a new Letter of Assent at least raises an issue of fact concerning the continuing validity of the 2000 Letter of Assent. Aff. in Opposition, ¶ 5. I disagree. The language of the Letter of Assent is straightforward. It unambiguously requires that the employer send timely notice in order to terminate its agreement to make contributions to the Funds. Maraia's letter to Dwyer does not suggest that the Union is revoking the existing agreements. Therefore, the Letter remains in force.

The question is: against whom can the agreement be enforced?

Defendant asserts that he is not liable under the Letter of Assent because he only signed it on behalf of On-Line, without intending to bind himself. The Letter of Assent clearly binds the

"Employer" and On-Line is named as the Employer. But On-Line was not a corporation in good standing at the time the letter was signed, or when Dwyer made his early contributions to the funds, or at any time until just before this lawsuit was filed.

Because plaintiff does not correctly explain the state of the law, and defendant did not bother to explain it at all, I will discuss the matter at some length, noting that the New York Court of Appeals seems never to have spoken to this issue.

The general rule in New York is that if an individual signs a contract on behalf of a corporation while the corporation is dissolved for failure to pay its franchise taxes, the individual assumes personal liability under the contract for the subject matter of that contract. *Brandes Meat Corp. v. Cromer*, 146 A.D.2d 666, 667, 537 N.Y.S.2d 177 (2d Dept. 1989), interpreting N.Y. Tax Law § 203-a (7). However, once a corporation is reinstated,[2] liability – even for contracts entered into during the period of dissolution – reverts, nunc pro tunc, to the corporation. This is because reinstatement "shall have the effect of annulling all of the proceedings theretofore taken for the dissolution of such corporation...and it shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation [of dissolution], with the same force and effect as if such proclamation had not been made or published." N.Y. Tax Law § 203-a (7).

Despite this provision of New York Tax Law, plaintiffs claim that Dwyer remains personally liable for the contributions even though On-Line's corporate status was reinstated,

---

[2] Reinstatement after dissolution for failure to pay franchise taxes may occur by filing the certificate of consent from the commissioner of taxation and finance, which is obtained after the back taxes are paid. N.Y. Tax Law § 203-a (7).

relying on Worldcom Inc. v. Sandoval, 182 Misc.2d 1021, 1024 (Sup. Ct. New York 1999). Worldcom contains the following statement, "Under New York law, the individual shareholders and officers of a corporation are legally responsible for contractual obligations where the contract was entered into after the corporation was dissolved for nonpayment of franchise taxes, even if the corporation was later reinstated." Id.

Worldcom cites Poritzky v. Wachtel, 176 Misc. 633 (Sup. Ct. Putnam County, 1941). The defendant in Poritzky, acting on behalf of Camp Secor, Inc., a corporation organized in 1930, opened an account in 1932 with plaintiff butcher and over the course of a few years ran up a tab of $2,180.50. Id., at 633-4. The corporation was dissolved on December 16, 1935 for failing to pay its franchise taxes, but defendant Wachtel, the corporation's president, continued to order meat from plaintiff in the name of the corporation. Id., at 634-5. Finally, on July 6, 1940, plaintiff commenced an action for goods sold and delivered against defendant personally. Id., at 634. The corporation was reinstated by payment of back franchise taxes nine months later, on March 15, 1941. Id.

Recognizing that a literal reading of the Tax Law supported Wachtel's argument, the Poritzky court concluded that the facts before it smacked of possible fraud and abuse by the officers of closely-held corporations. The court expressed concern that "a former officer of a dissolved corporation could obtain credit and then upon subsequent discovery of the non-existence of the corporation, by merely paying arrears in franchise taxes, could shift the personal liability which the law would otherwise impose upon him, back to the corporation." Poritzky, 176 Misc., at 635. For that reason, the Poritzky court held Wachtel personally liable for debts

he had incurred in the name of the corporation while it was dissolved.

Poritzky has been relied upon repeatedly over the years. In addition to Worldcom, Annicet Associates, Inc. v. Rapid Access Consulting, Inc., 171 Misc.2d 861, 864 (Sup. Ct. Rockland County 1997) and Olympus America, Inc. v. 5th Ave. Photo, Inc., 194 Misc.2d 752, 753 (New York Civ. Ct. 2002) both cite Poritzky's concern about fraud as the basis for not permitting an individual to avoid liability after a corporation is reinstated.

Just last year, in Lodato v. Greyhawk N. Am. L.L.C., 10 Misc.3d 418, 422 (Sup. Ct. Kings Co. 2005), the court, after endorsing Poritzky's reasoning, suggested a number of factors that a court should consider in deciding whether or not liability should shift back to the corporation retroactively following reinstatement. According to Lodato, liability should shift back to the corporation only when the officer did not know about the corporation's dissolution; the dissolution was "truly inadvertent," rather than a result of neglect; and the corporation quickly sought reinstatement. Id. The Lodato court stated that a corporate officer could not be held liable for debts incurred on behalf of a reinstated corporation unless the plaintiff made "a showing of fraud or misrepresentation." Id.

The Lodato court also held that fraud during the period of dissolution (in addition to fraud as the motive for reinstating the corporation's good standing) would be an important factor. Of particular relevance to our case, the Lodato court concluded that the corporate officer should remain liable because the officer likely knew about the corporation's dissolution, based on his position as the chief officer of a closely held corporation. Id., at 427.

The concern for the possibility of fraud, demonstrated by Poritzky and its progeny, has

not always trumped the literal language of the statute, however. In Dept. 56, Inc. v. Bloom, 186 Misc.2d 901, 902 (Sup. Ct. Richmond County 2001), defendant Steve Bloom, president of EPS Collector's Emporium, Inc., a New Jersey corporation, bought goods in 1996-7 from plaintiff Department 56, Inc., a Minnesota corporation. At the time of these purchases, EPS' charter had been revoked for well over three years. The corporation was not reinstated until September 2000. The decision does not state when the complaint was filed, but EPS was reinstated only a few months prior to the decision on Bloom's motion for summary judgment. Bloom claimed he had not been aware of the revocation of EPS' charter until plaintiff brought that fact to his attention (though the decision does not tell us how this occurred). Id.

The Bloom court decided that liability for the debt fell on the reinstated corporation. Id., at 905. Pointing out that Poritzky went against the literal wording of New York Tax Law § 203-a (7), the judge in Bloom concluded that the Poritzky court's concern about fraud was misplaced, saying, "I can conjure up no scenario that would entice a corporate officer to purposefully allow his corporation to be dissolved and I fail to see how, even if he did, there would be any fraud perpetrated on a creditor or any benefit inuring to such corporate officer....Not only is there no incentive to avoid paying franchise taxes, there are disincentives." Id., at 904.

I find the reasoning of the Bloom court singularly unpersuasive, especially considering the record before me, which strongly suggests a deliberate effort to evade the payment of contributions by a person who was afforded the protections and benefits of the Union contract during On-Line's period of dissolution. Fortunately, existence of a fraud exception to the general rule has been endorsed by the United States Court of Appeals for the Second Circuit

(whose decisions, it should go without saying, are absolutely binding on this court).[3]

In L-Tec Electronics Corporation v. Cougar Electronic Organization, Inc., 109 F.3d 85, 87 (2d Cir. 1999), a corporation was dissolved on September 27, 1995, for failure to pay franchise taxes. The corporation purchased goods from plaintiff L-Tec. Some of the goods were delivered while the corporation was in dissolution. No one paid for the goods, and L-Tec sued both the corporation and its principals. The Court of Appeals affirmed the district court's dismissal of L-Tec's claim against the officers. In so concluding, the Circuit, like the district court, relied on Prentice Corp. v. Martin, 624 F.Supp. 1114 (E.D.N.Y. 1986), in which Judge Nickerson interpreted New York law to preclude personal liability for individual officers on obligations undertaken in the name of a dissolved corporation once its corporate status was restored. The Circuit ruled, "Here, the district court properly subscribed to the analysis of New York case law in Prentice, a federal case with analogous facts. In that case, Judge Nickerson found strong indicators in the law of New York that officers should not be held personally liable *under circumstances such as those presented in this case.*" (Emphasis added). L-Tec, 109 F.3d, at 87.

Although there is no specific mention of fraud in L-Tec, the Second Circuit's heavy emphasis on Judge Nickerson's opinion in Prentice impels me to turn to that case for guidance, and there I find explicit recognition of a fraud exception to the literal language of the Tax Law.

In Prentice, the individual defendant, Martin, was the president and chief operating officer and principal shareholder of Related Industries, Inc. Related was dissolved for failure to

---

[3] Which is why I find it odd that neither party seems to have read any Second Circuit case on the subject..

pay franchise taxes on June 24, 1981 and was reinstated to corporate status on January 2, 1985. After dissolution and before reinstatement, defendant, purporting to act on behalf of Related, entered into two contracts with plaintiff Prentice Corp. Related breached the contracts, was sued and a judgment was entered against it in the Eastern District of New York. Prentice then sought to hold Martin personally liable for the judgment.

After an extended discussion of New York's conflicting law,[4] the court concluded that, *absent fraud*, a party who dealt with a corporation that was involuntarily dissolved for failure to pay franchise taxes had no remedy except against the corporation once it was reinstated, because reinstatement validated the acts taken during the period of dissolution "as if the charter had never been repealed." Id. In so holding, Judge Nickerson cited a very old Second Circuit case, Held v. Crosthwaite, 260 F. 613 (2d Cir. 1919).

Judge Nickerson concluded his opinion as follows:

In the present case both parties agree that Related held itself out as a corporation and purported to exercise the powers and functions of a corporation in its dealings with plaintiff. Plaintiff's remedy is only against Related *unless the defendant acted fraudulently or in bad faith*. In the latter event, defendant may be held personally liable. (Citing Held, 260 F. at 617). (Emphasis added).

Because there existed a disputed issue of material fact concerning the *bona fides* of defendant's conduct, the court denied cross-motions for summary judgment and set the matter for trial.

Obviously, then, the Second Circuit's failure to discuss the fraud exception to the rule of reversionary liability was not intended to overrule its own decision in Held, where the same

---

[4] Interestingly (in view of the result of the case) Judge Nickerson rejected Poritzky, concluding that it allowed for a broader rule than the narrow exception Judge Nickerson found in New York law.

Court explicitly recognized just such an exception. Rather, the Circuit concluded that "the circumstances...presented" in L-Tec did not bring the case within Judge Nickerson's limited fraud/bad faith exception.

This Court will (indeed, must), follow the rule of Held/Prentice/L-Tec. Unless the evidence establishes that the defendant acted fraudulently or in bad faith, the Funds will have to look to On-Line for their remedy.

Applying that rule, the Funds' motion for summary judgment must be denied – even though defendant failed to file a Rule 56.1 Statement. The Funds did not tailor their Statement of Undisputed Facts to this rule, and while the facts in the record suggest the possibility of fraud or bad faith on Dwyer's part, they do not compel such a conclusion. A variety of factual issues need to be tried concerning the circumstances of the dissolution and reinstatement and Dwyer's behavior during the interim period – including, specifically, his conduct at or about the time the contract was signed and his knowledge of the corporation's status at that time.

I reject plaintiff's argument that Dwyer waived this defense by interposing a general denial to plaintiffs' allegations, rather than specifically asserting that plaintiffs sued the wrong party.

Plaintiffs incorrectly point to Rules 9(a) and 8(c) of the Federal Rules of Civil Procedure in support of their claim that defendant has waived his so-called "improper party" defense. Pls.' Reply Mem., at 6. The defendant asserted, in response to a specific allegation, that he was not personally liable for ostensibly corporate debts. The reason why he is not liable – N.Y. Tax Law § 203-a (7) – is not an affirmative defense that needs to be raised under either Rule 8 or Rule 9.

Neither is defendant's lack of fraud (the only basis for an exception to the statute) something that needs to be pleaded affirmatively. "A general denial puts in issue only the facts which the pleader is required to prove in order to recover." Federal Deposit Ins. Corp. v. Siraco, 174 F.2d 360, 362 (2d Cir. 1949). Because, under N.Y. law, plaintiffs must prove fraud in order to prove that Dwyer is personally liable for contracts undertaken in the name of a reinstated corporation, Dwyer's denial of personal liability puts fraud at issue and is sufficient.

I also reject the suggestion, raised in a District of Columbia case, Weade v. Trailways of New England, Inc., 325 F.2d 1000, 1001, 117 U.S. App. D.C. 73 (D.C. Cir. 1963), that defendant should be estopped from asserting his defense of non-liability. In Weade, Nelson H. Weade sued Trailways of New England, Inc. for damages based on injuries allegedly resulting from a collision between a car he was driving and a bus allegedly "owned or operated and controlled" by Trailways. Id. In response to a single paragraph of the complaint that included many details about the collision, Trailways denied "each and every allegation" rather than admitting some allegations, denying others, and pleading lack of knowledge or information on the rest. Trailways moved for summary judgment, asserting that it was an improper party to the action because the bus in question did not belong to the company. The D.C. Circuit, however, estopped Trailways from asserting this defense, because the general denial in its answer did not constitute "the plainest kind of notice to Weade that he had sued the wrong corporation." Id.

However, estoppel is not appropriate in this case. The usual rule is that a corporate officer is not liable for debts incurred by a corporation during a period of involuntary dissolution, because the Tax Law imposes liability *nunc pro tunc* on the corporation once it returns to being

Dwyer would defend by asserting that he personally was not liable. They devoted two paragraphs of the Complaint to alleging that Dwyer was personally liable for a debt that, on its face, is a debt of a corporation. Dwyer, in his Answer, specifically denies the allegations of each of these paragraphs. Compl. ¶¶ 6-7, Answer ¶¶ 6-7. In this situation, there is no basis to estop the defendant from asserting non-liability just because he did not plead in detail the reasons why the fraud exception to the statutory presumption of non-liability did not apply.

The motion for summary judgment is denied. The parties are on notice that they may be called for trial at any time after July 1, 2006.

This constitutes the decision and order of the Court.

Dated: June 14, 2006

_____
U.S.D.J.

BY FAX TO ALL COUNSEL